## WALL *v.* COUNTY OF MONROE.

1. A county in Arkansas, when sued on its warrants by a *bona fide* holder thereof for value, may set up any defence to which they were subject in the hands of the original payee.
2. The same rule is applicable where the warrants are issued to the payee, in lieu of others in his favor cancelled by the county court, after it found them to be just claims against the county.
3. Neither the order directing the issue of the original warrants, nor that cancelling them and substituting others in their place, has the force of a judicial determination concluding either the payee of them or the county.

ERROR to the Circuit Court of the United States for the Eastern District of Arkansas.

This is an action upon the warrants of the county of Monroe, Arkansas, which were drawn by the clerk of the county

upon its treasurer, in favor of one Frank Gallagher, and transferred by him to the plaintiff.

The following is a copy of one of them. The others are of like tenor and effect, though some of them are for only $20.

"$50.]                                        [No. 804.

"The treasurer of the county of Monroe will pay to Frank Gallagher or bearer the sum of fifty dollars, out of any money in the treasury for general county purposes and not otherwise appropriated.

"Given under my hand, at office, in Clarendon, Ark., this fifteenth day of September, 1875.

"W. S. DUNLAP, Clerk."

They were renewal warrants, drawn in lieu of others which, under the laws of Arkansas, had been called in by the county court for examination, registration, and reissue. The called-in warrants, having been found to be just and legal claims against the county, were cancelled by order of the court, and the clerk was directed to issue new warrants in lieu thereof to the original payee, Frank. Gallagher.

The new warrants were purchased in good faith for a valuable consideration by the plaintiff, who, on the refusal of the treasurer to pay them on demand, instituted this action. The answer sets up as a defence that said Gallagher was, at the time the warrants were issued to him, indebted to the county as surety on the official bond of one Ambrose Gallagher, tax-collector of the county, in a sum larger than the amount sued for; that since then the county has recovered a judgment against the said Frank Gallagher for a much larger amount than the warrants in suit; that the judgment was recovered before the transfer of the warrants to the plaintiff, and has not been reversed or modified, and is still in full force and unsatisfied; and it asks that the judgment may be set off against the warrants. The plaintiff demurred to the answer, alleging as the cause of demurrer that its allegations were not sufficient to constitute a defence at law.

Upon the argument of the demurrer the following questions arose : —

First, Is the defendant estopped by the reissue of the war-

rants to set up a defence known to have been existing at the time they were reissued in lieu of the original warrants surrendered to the county court, and by its order cancelled?

*Second*, Can the claim set up in the answer, if held by the county against the original payee when the warrants were issued or while they were still in his possession, be set up as defence or set-off in a suit by a holder of them for value, who had no notice of such defence when he acquired them?

On which questions the opinions of the judges were opposed, and the demurrer having been overruled, final judgment was rendered for the defendant.

Whereupon, upon motion of the plaintiff, the points on which the disagreement happened were stated under the direction of the judges, and certified to this court for final decision.

*Mr. M. T. Sanders* for the plaintiff in error.

Under the law of Arkansas, the warrants which are the foundation of this suit are negotiable instruments. Rev. Stat., sects. 602, 603, 605; *Crawford County* v. *Wilson*, 7 Ark. 214; *Carnall* v. *Crawford County*, 11 id. 604; *Gunn* v. *Pulaski County*, 3 id. 427; *Adamson* v. *Adamson*, 9 id. 26; *Brem* **v.** *Arkansas County Court*, id. 241; *Reiff* v. *Conner*, 10 id. 241; *Jefferson County* v. *Hudson*, 22 id. 595.

Sect. 27, art. 7, of the Constitution of the State gives to the county court exclusive original jurisdiction in the local concerns of the county. It is a court of record. Its judgment allowing demands against the county, and directing the issue of a warrant for their payment, merges them and all preexisting equities between the parties, and cannot be collaterally impeached.

The transferee of the warrants sued on must be treated as the assignee of the judgment pursuant to which they were issued. A defence which might have been made available against the original claim cannot be set up in an action on the judgment. *Noble* v. *Merrill*, 48 Me. 140; *Guinard* v. *Heysinger*, 15 Ill. 288; *Flint* v. *Sheldon*, 13 Mass. 443; *Ellis* v. *Clarke*, 19 Ark. 420.

The defence here does not arise out of the transaction in which the warrants, all of which bear date in 1875, were issued. It rests upon a claim of the county against the original payee,

who was a surety of the defaulting county tax-collector for the year 1872. Conceding that they are of no higher grade than bills of exchange or promissory notes negotiated after maturity, the county could not avail itself of the defence set up.

The indorsee of an overdue negotiable note takes it subject to all the equities which attached to it in the hands of the payee, if they are connected with the note itself, but not to such as grow out of distinct and independent transactions. *National Bank of Washington* v. *Texas*, 20 Wall. 72, 89; *Oulds* v. *Harrison*, 10 Exch. Rep. 572; *Burrough* v. *Moss*, 10 Barn. & Cress. 558; *Renwick* v. *Williams*, 2 Md. 356.

*Mr. Augustus H. Garland, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

The warrants in suit are evidences of indebtedness by the county of Monroe, issued by that branch of its government to which is intrusted, by the laws of the State, the examination and approval of claims against the county. They are orders upon the treasurer of the county to pay out of its funds for county purposes, not otherwise appropriated, the amounts specified. They establish, *prima facie*, the validity of the claims allowed and authorize their payment. But they have no other effect. Their issue determined nothing as to other demands of the payee against the county, or of the county against him. Had there been other claims to be adjusted and settled between the parties, these warrants, if lawfully issued, would have been taken as approved items in the account — nothing more.

The warrants being in form negotiable, are transferable by delivery so far as to authorize the holder to demand payment of them and to maintain, in his own name, an action upon them. But they are not negotiable instruments in the sense of the law merchant, so that, when held by a *bona fide* purchaser, evidence of their invalidity or defences available against the original payee would be excluded. The transferee takes them subject to all legal and equitable defences which existed to them in the hands of such payee.

There has been a great number of decisions in the courts of the several States upon instruments of this kind, and there is

little diversity of opinion respecting their character. All the courts agree that the instruments are mere *prima facie* and not conclusive evidence of the validity of the allowed claims against the county by which they were issued. The county is not estopped from questioning the legality of the claims; and when this is conceded the instruments conclude nothing as to other demands between the parties. The cases will be found collected in notes to the fourteenth chapter of Dillon on Municipal Corporations. The law respecting these instruments is also fully stated by this court in *Mayor* v. *Ray*, reported in the 19th of Wallace. That case was upon warrants of a city and not of a county, a circumstance which does not affect the doctrine. The court, speaking through Mr. Justice Bradley, said: "Vouchers for money due, certificates of indebtedness for services rendered, or for property furnished for the uses of the city, orders or drafts drawn by one city officer upon another, or any other device of the kind, used for liquidating the amounts legitimately due to public creditors, are, of course, necessary instruments for carrying on the machinery of municipal administration, and for anticipating the collection of taxes. But to invest such documents with the character and incidents of commercial paper, so as to render them in the hands of *bona fide* holders absolute obligations to pay, however irregular or fraudulently issued, is an abuse of their true character and purpose." And again: "Every holder of a city order or certificate knows that, to be valid and genuine at all, it must have been issued as a voucher for city indebtedness. It could not be lawfully issued for any other purpose. He must take it, therefore, subject to the risk that it has been lawfully and properly issued. His claim to be a *bona fide* holder will always be subject to this qualification. The face of the paper itself is notice to him that its validity depends upon the regularity of its issue. The officers of the city have no authority to issue it for any illegal or improper purpose, and their acts cannot create an estoppel against the city itself, its taxpayers, or people. Persons receiving it from them know whether it is issued, and whether they receive it for a proper purpose and a proper consideration. Of course they are affected by the absence of these essential ingredients; and all

subsequent holders take *cum onere*, and are affected by the same defect." These observations apply equally to the county warrants in suit, as to the city warrants there considered. And the same reasons which deny to them negotiability in the sense of the law merchant, allow any matter of set-off to them which the county held against the original parties.

The case of *Crawford County* v. *Wilson*, in the Supreme Court of Arkansas, is cited as showing that a different rule prevails in that State. The language of the opinion, that county warrants are endowed with the properties of negotiable instruments, must be read in connection with the point involved, which was whether county warrants were transferable by mere delivery, so as to vest the legal interest in the holder. To this extent they may be called negotiable, but no court of Arkansas has held that they were negotiable in the sense of the law merchant, so as to shut out, in the hands of a *bona fide* purchaser, inquiries as to their validity, or preclude defences which could be made to them in the hands of the original parties. The law is not different there from that which obtains in other States.

The cancellation of the warrants originally issued and the substitution of others in their place did not change their charter. Neither that proceeding nor the original auditing of the claims of Gallagher had the force of a judicial determination, concluding either him or the county. There was no litigation on the subject between adversary parties which could give to the result any greater efficacy than the award of an ordinary board authorized to audit claims against a municipal body. *Shirk* v. *Pulaski County*, 4 Dill. 209.

We answer, therefore, the first question certified to us in the negative, and the second in the affirmative, and accordingly affirm the judgment.

*Judgment affirmed.*